Our next case for argument is Al-Nahhas v. 777 Partners. Mr. Daughtry. Thank you, Your Honor. May it please the Court, my name is Patrick Daugherty and I represent the 777 defendants. The case before the Court today is now moot. While this case was pending on appeal, the plaintiff entered into a voluntary settlement with his lender. Yes, Your Honor. Are you acquainted with Campbell Uwald v. Gomez? I don't believe we addressed that in our briefs. I am sure you did not. But the Supreme Court has held that disputes about whether a claim has been settled or resolved or released have nothing to do with mootness. Nine to nothing decision by the Supreme Court of the United States. Your argument simply contradicts the holding of the Supreme Court. So I think you should move on. Thank you, Your Honor. I'll help you move on. Why would it make sense to have an arbitrator, rather than the district court, decide whether you have waived the right to compel arbitration as a result of your litigation conduct when that conduct took place entirely before the district court? It's almost as if you're making the arbitrator into an appeals court of some sort. Thank you, Your Honor. There are two things I would like to say in response to that question from the court. The first is that under the broad delegation provision in the contract, all disputes relating to the scope of the arbitration provision are to be decided by the arbitrator. So once the court has determined that there is, in fact, a contract, a fact that I don't think it is an issue here because all four of the relevant loan contracts were attached to the complaint that was filed by the plaintiff. Once we've established that there's a contract, the scope of the arbitration provision within that contract, all challenges must be heard by the arbitrator in the first instance. And in this court's recent opinion in KFC v. SNAP, the court made clear that once there is a contract, all other matters are capable of delegation to the arbitrator. And these contracts, these arbitration agreements, have a very broad delegation provision. So I think requiring the arbitrator to decide that question, Your Honor, is enforcing the broad delegation provision in the contract. You know, the arbitration provisions were there for all to see in the loan agreements, as you note, attached to the complaint. Yet your clients filed an answer to the complaint and participated in the litigation for 14 months without so much as a whisper of arbitration. So why doesn't that alone evince a decision to relinquish your right to arbitrate rather than to proceed in the district court? Your Honor, I would suggest to the court that under this court's precedent in Kawasaki, no single factor is determinative. We're dealing with a totality of the court. As soon as you say that, you immediately lose. Because as long as no single factor is determinative, you're looking at an exercise of discretion by the district judge, right? You have a plausible, perfectly sensible exercise of discretion. The only way you can get anywhere on appeal is to say the district judge didn't have discretion, that there was some overriding thing, some rule of law. But if you take the every factor counts, consider everything, then the decision is made by the district judge. I hope you see the problem. Your Honor, in general, I agree with your premise that frequently when there are discretionary decisions, we entrust them to the district court. However, I believe in the case of arbitration enforcement issues, this court has said that it reviews the decision of whether or not to send a case to arbitration de novo. The factual finding. Not for whether there has been forfeiture in the course of litigation. What case do you rely on for the proposition that we ignore the district judge's decision in determining whether litigation conduct forfeits arbitration? Your Honor, I think all the cases that discuss the relevant factors set forth that the waiver question is reviewed de novo. And I specifically would point to that. I asked a specific question about what case you're relying on that deals with forfeiture by the course of litigation. Most of these cases are cases about whether there is a contract. And that is, indeed, a decision for the Court of Appeals. We have a lot of cases about forfeiture by course of conduct in litigation. And those, we review deferentially. Now, if you have some contrary case, I would appreciate being pointed to it. Your Honor, I believe that the court in Kawasaki was considering the question of waiver by litigation conduct. And the court said that it reviewed that question de novo. And Judge Robner, to return to your question, there are three factors that the courts frequently cite when considering the waiver question. Prejudice to the non-moving party, the participation in the litigation of the moving party, and the question of diligence versus delay. Under the prejudice factor, the district court here made a finding that there was no substantial prejudice to the plaintiff from the delay in this case. Under this court's decision in cabinetry, that factor should weigh heavily on the decision of whether or not to send the case to arbitration. Indeed, far from being prejudiced, the plaintiff benefited by being able to conduct discovery to pursue discovery in support of his claims. On the participation factor, I would distinguish this case from the court's prior decision in St. Mary's Medical Center. In St. Mary's Medical Center, the defendant propounded discovery, received responses from the plaintiff, and then used that discovery to make a motion to dismiss. Only after that motion to dismiss was unsuccessful did the defendant then seek to invoke arbitration. Here, the 777 defendants sought no affirmative relief from the district court and made no affirmative use of discovery. And this court has never found that simply responding to discovery can support a waiver of the right to compel arbitration. Instead, district courts throughout the circuit continue to distinguish between conduct that is responsive and required by the federal civil rules versus affirmatively invoking the jurisdiction of the federal courts to conduct one's own discovery. Judge Rovner, on the diligence versus delay factor, you are correct that 14 months passed between the time the case was filed and when the motion to compel arbitration was filed. But there was little activity for extended periods due to the neglect of prior counsel for all defendants. The district court noted. You see, that's a problem for you. We really hold litigants responsible for any mistake, for the mistakes and the omissions of their counsel. And we do it all the time. You cannot, you know, that's not, that's on you, you see. Yeah. Your Honor, even assuming that that is correct, I think that when this court has considered the question of diligence versus delay, this court has also looked at the procedural posture of the case. And I would point out that in Sharif v. Wellness International, there was an 18 month delay. And the court found no waiver. And when it analyzed that case, it noted that no trial date had been set in that proceeding. And you can contrast that holding with the holding in cabinetry, which found a waiver after a shorter delay, but where the motion to compel arbitration was made just five months before a scheduled trial date. Here, there has been no trial date set. And the case has not progressed beyond written discovery. How do we deal with the fact that you did file an answer to the complaint, which was totally silent on the matter of arbitration? Discovery was dragged out. And that forced the plaintiff to file a motion to compel. You did answer three rounds of interrogatories before you even breathed a word of arbitration. It just is so inconsistent with the right to arbitrate, which is about removing a dispute from a court. I'm having some problems. I understand, Your Honor. And again, I would go back to the three key factors that are discussed in Kawasaki, prejudice, participation, and diligence versus delay. I would say here, the district court made a clear finding that there was no prejudice. On the participation factor, yes, we responded to discovery. But this court, when it has evaluated participation, has looked at things like making your own discovery requests, moving to dismiss, seeking some sort of affirmative relief from the court. We didn't do that either. So our view is that the prejudice and participation factors support a finding of no waiver. And the impact of the delay factor is mitigated by the early procedural posture of the case, because we do not have a trial date set. Your Honors, if I may move on to the question of third party enforcement. The district court erred when it relied on this court's decision in Sosa, because Sosa was a diversity case. And this case is a federal question case. Under this court's decision in Berger, in a federal question case, the district court should have applied a federal choice of law rule. Using a federal choice of law rule would have led to the application of the federal equitable estoppel standard, under which there are two relevant prongs that permit the 777 defendants to enforce the arbitration agreements. Those are when a party to a contract references the contract in making their claims. And the second is when the party to the contract alleges interdependent misconduct between another party and a non-party. Both circumstances are present here. The contract is referenced in each and every count of the plaintiff's complaint.  that the 777 defendants operate and direct and conduct the affairs of, and act as agents of, the tribe's lending business. Thus, under federal law, the 777 defendants may enforce the arbitration agreements. And in fact, that is exactly the result that was reached in the case of Huntley v. Rosebud in the Southern District of California last year. The final point I'll make, Your Honors, is that even if Illinois law applies, the district court's analysis of Illinois law was flawed. Illinois law protects a third party when a contract describes a class to which that third party belongs. Here we have an allegation in the complaint that a subsidiary of the 777 defendants acted as an agent. And that admission in paragraph 22 of the complaint should have been taken as a judicial admission. And unless the court has further questions, I would respectfully request to reserve the remainder of my time for rebuttal. Certainly, counsel. Thank you. Mr. Goldstein. Good morning, and may it please the court. My name is Matthew Goldstein, and I represent Ido Al-Nahas, the plaintiff, Eppley. The district court should be affirmed for each of the reasons laid out in our briefs. Today, I'd like to briefly just address three. First, as this court recognizes, this case is not moot. Second, the defendants' waiver of the 777 waived any right that they had to compel my client to arbitrate. And third, even if they did not waive their right to compel arbitration, they cannot enforce the underlying contracts as non-signatories under applicable Illinois law. First, just turning to why this case is not moot, your honors, the Supreme Court has said that a case is moot only when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party. Here, the calculation of damages is the subject of ongoing discovery and is yet to be determined. In addition, my client seeks, but has not yet obtained, injunctive and declarative. I take it you're not familiar with Campbell-Uwald either? No, your honor. The Supreme Court held there that this is basically the defense of release. It's an affirmative defense. It has nothing to do with mootness. Yes, your honor, I will move on. I was wrong, by the way. There is a dissent in Campbell-Uwald, but the majority opinion is what it is. Yes, judge. I will move on to the merits. Turning to waiver, the district court correctly held that assuming the 777 defendants had any right to compel my client to arbitrate his claims, they forfeited that right, as their substantial delay in litigation conduct was wholly inconsistent with an intent to arbitrate. You know, they did wait a long time to move to compel arbitration, but does that passage of time forfeit or waive their right to compel arbitration when they didn't move to the dismiss? They didn't send out any affirmative discovery. They didn't do anything other than respond to discovery requests. Your opponent, Mr. Daugherty, is correct. That is a slightly different posture from some of the other cases. Yes, your honor. Naturally, we concede that this case is this case, and there is no bright-line rule for waiver, but we contend that this 14-month delay didn't just stand alone. It was coupled with other factors that are inconsistent with the right to arbitrate. For example, the 777 defendants, as this court recognized, they answered plaintiff's complaint. They demanded a trial by jury, and they raised five affirmative defenses. Arbitration was not among them. They moved the district court and the magistrate judge to set and reset various deadlines in this case, and among those deadlines was a deadline for plaintiff to file his motion for class certification. We contend that that is wholly inconsistent with an intent to arbitrate. Indeed, everything short of a trial date was set in this case, and by the time the 777 defendants changed course and filed a motion to compel arbitration, only four months remained before the close of fact discovery, and we contend that proceeding judicially means that they implicitly abandoned their right under this court's precedent. In addition to the 14-month delay, the district court found that the 777 defendants dragged out discovery that they led my client on a fruitless discovery chase and then dropped a bombshell in this case only after agreeing to provide responses to additional discovery that was issued, and that's not consistent. I see a lot of inadequate representation on the other side, for sure. So does that demonstrate an intent to litigate or just demonstrate the inadequacies of counsel? Your Honor, I think it demonstrates that they implicitly abandoned their right to arbitrate. I don't know why they did what they did. I can say, as the district court recognized, that the attorney's acts are attributable to the client. That's just how it is. But we think they were proceeding judicially here. We think that all the facts support that conclusion. Parties every day throughout the country, defendants big and small, file motions to compel arbitration at the first possible opportunity, and parties, especially sophisticated parties, like the 777 defendants, don't wait 14 months to file a motion to compel arbitration if they have an intent to arbitrate. The 777 defendants submit that they did not participate in the discovery process, but that is simply not true, Your Honor. At a hearing on April 12th, 2023, before Magistrate Judge Fuentes, the 777 defendants state, and I quote, the 777 defendants have not and are not refusing to participate in the discovery process, end quote. Indeed, defendants' counsel conferred, first of all, defendants' prior counsel and their current counsel conferred with plaintiffs' counsel on four separate occasions that are in the record regarding on four, excuse me, three sets of written discovery requests that we issued. And that's not consistent with an intent to arbitrate. But did they, did they ask for discovery on their own or file substantive motions in the district court? I don't think so. That's correct, Judge Roebner. They did not issue any discovery requests of their own and they did not file a motion to dismiss or a motion for summary judgment. But as this court has held, a party doesn't need to do that in order to demonstrate that they've implicitly abandoned their right to arbitrate. We look to the specific facts of the case. And here they answer the complaint and they proceeded judicially. I'd also note that by April of 2023, when they filed their motion to compel arbitration, we had already issued 11 third party subpoenas that had resulted in the production of many documents at great expense. Your honors, the 777 defendants knew about this arbitration provision since at least February 10th of 2022. The district court found that because we attached the loan agreements as exhibits to our complaint, they cannot claim that they didn't know about this. And they don't in fact claim that they didn't know. And yet they waited 14 months to compel arbitration. They proceeded judicially and the district court was correct to so hold. Now, even if the defendants did not waive their right to arbitrate, the district court should be affirmed because it was correct to find that the 777 defendants cannot enforce the underlying contracts as non-signatories under applicable Illinois law. First of all, the district court's choice of law decision was correct. The choice of law issue was waived, number one, as the district court noted, but even if it was not waived, the defendants did not say that there was an outcome determinative difference between Illinois law and the law of any other jurisdiction that could have possibly necessitated a choice of law determination. I would note that below the 777- The contract calls for the application of tribal law. How does this issue come out under tribal law? Well, Your Honor, the defendants can see that there is no tribal law that speaks to third-party contract enforcement. Well, one can often say the same thing about federal law. Usually it adopts some other source of law. Do we know anything about how the tribe approaches that question? I cannot speak to that, Judge. I would say, though, that we submit that the 777 defendants cannot invoke a choice of law clause in a contract to which they're not a party. So in any case, the district court was correct to apply Illinois law here. But again, to the extent that tribal law should apply, and certainly it does not for many reasons laid out in our briefs, there is no tribal law that speaks to contract enforcement. No, you're not addressing my question, right? When a body of law does not have any clauses dealing with some issue, it usually turns to some other body of law. Most things described as federal law are actually borrowed from states. I was wondering whether the tribe had any such proviso. I don't know, Your Honor. You don't know, you haven't looked. Okay. I would just note, Your Honor, that the first time, tribal law has never been raised in the district court, and that the first time the defendant said that tribal law applies is on appeal. Again, below, the defendants argue that they can force the contracts under a theory, a federal theory of equitable estoppel. The Supreme Court said in Arthur Anderson, and this court has said repeatedly that we look to state law to decide questions as to whether or not a third party can enforce a contract as a non-signatory. So we look to state law. Exactly my point. We look to some other body of law, and that's why we would need to know what the tribe looks to. But apparently nobody's paid any attention to that question. Your Honor, again, we submit that Illinois law applies, and the defendants concede that there is no tribal law on this point. They don't say how the tribe fills in the gaps, if at all. I simply don't know, Your Honor. What I do know is that these defendants cannot enforce these provisions as non-signatories under Illinois law. Illinois law recognizes that a third party can, as a third-party beneficiary on an agency theory or on a theory of equitable estoppel, enforce a contract as a non-signatory, but none of these apply here. In their gray brief, the defendants concede that the only theory that they could possibly enforce these contracts on is a third-party beneficiary theory. But Illinois recognizes a strong presumption against conferring contractual rights on non-contracting third parties, and the defendants here simply have not overcome that strong presumption. The contract does not name them, nor does it describe a class to which they belong. Indeed, they deny that they are agents or affiliated entities of Zocaloans or the tribe. Because they deny those facts, they cannot enforce these agreements as third-party beneficiaries on a theory of agency, and as the district court recognized, there is simply no basis for... It says an arbitrator will decide all claims asserted by you individually against the tribe, us, any of our employees, agents, directors, officers, governors, managers, members, parent company or affiliated entities, collectively related third parties. What about that? Well, Your Honor, we submit that to... The burden is on them to identify a class to which they belong. They deny that they are an affiliated entity, or at the very least, they don't claim that they are. And we submit that you can only enforce a contract as an affiliated entity if you assert that you are an affiliated entity. They don't make that claim, so they can't... But you make that claim. Your Honor, we don't believe we make that claim in our complaint. Your Honor... You have said that 777 and... I'm blinking on the other name. They control Rosebud. Your Honor, I would say a few things. Number one, this court noted in Sosa in 2021 that... This court relied on Black's Law Dictionary, and the court said that a corporation that is related to another corporation by shareholdings or other means of control, that's what an affiliate is. Our complaint does not allege that they are related by shareholdings or common ownership. We allege that the 777 defendants are indeed the beneficiaries of this lending operation, but we don't allege that these companies are related by shareholding or other means of control. They mentioned also, excuse me, the defendants mentioned that we had an allegation about agency. Well, first of all, that allegation was just as to tactical marketing partners, number one. Number two is on information and belief. And also that we mentioned the word agent does not mean that we established that there is indeed a principal agent relationship here, and there is not, and the defendants don't claim that there is. Your Honor, we submit that the defendants cannot enforce these agreements as a related third party because they don't claim to be a related third party, and it's as simple as that. Well, it sounds like you want the benefit of alleging that they are related, but you don't want them to get any benefit from being related. Well, Your Honor, if we were applying a federal equitable estoppel test, which they cite this district court case Paragon, I mean, first of all, we're not using the loan agreement here as a sword and a shield, as the district court recognized. We believe and we maintain that this contract, both the arbitration provision and the loan agreement, is they're void, they're illegal, they cannot be enforced. We allege that they do business together, but we don't contend that the 777 defendants are an agent of Rosebud Lending or the tribe, or that they are affiliated by shareholdings or other means of control. I will just note, Your Honor, that the district court was also correct to hold that the 777 defendants cannot enforce the arbitration agreements under a theory of equitable estoppel. They have not shown any detrimental reliance. Indeed, they don't even contend that my client made any statement at all, let alone that they relied on any such statement to their detriment. The district court did not err in finding that the 777 defendants waived any right that they had to compel my client to arbitrate his claims. If this court finds that the district court erred in that finding, the 777 defendants cannot enforce these contracts because they are non-signatories to the agreements and cannot enforce them under Illinois law. The district court should be affirmed. Thank you. Thank you, counsel. Anything further, Mr. Drottery? Yes, thank you, Your Honor. Your Honor, to respond briefly to the point you raised regarding Campbell Ewald, if I understand the court correctly, you're referring to the 2016 decision of the United States Supreme Court. I believe that one could distinguish that case based on the fact that it addressed an unaccepted offer of settlement. Here we have a voluntarily accepted settlement. Which it analogized to a release, right? And pointed out that even a release, a signed release does not make a case moot. Under Rule 8, a signed release is an affirmative defense. It does not spoil the district court's jurisdiction. That's pretty black letter law. Your Honor, I would also encourage the court to look at the related doctrine of standing because we do have a putative class action here. And if the plaintiff is to serve as the class representative, the fact that his claims, having fully recovered from his lender, are now distinctively different than those of all the other class representatives, certainly could have a significant impact. How is he fully recovered when one of the things he's seeking is punitive damages? Your Honor, the claim that he seeks punitive damages under is an Illinois state law claim, the PLPA. And we believe that Illinois law requires a live claim for compensatory damages in order for a plaintiff to recover punitive damages. So because the plaintiff has fully recovered 100%, more than 100% of his compensatory damages, he cannot continue a suit under Illinois law to seek additional punitive damages from other parties. That sounds like a defense on the merits. The plaintiff wants money, more money than he's gotten so far, and the defendant can provide the money. There's no more that's needed to have a live case. You might have a perfect defense on the merits or a defense to more damages on the grounds of release. It just has nothing to do with mootness. Your Honor, I'll briefly, if I could, point to the language in Kawasaki that we rely upon in response to the court's earlier question, which is in Kawasaki, this court said, while the factual findings that led to the district court's conclusion of waiver are reviewed for clear error, the question of whether the party's conduct amounts to waiver is reviewed de novo. And Kawasaki itself cited another Seventh Circuit case, Ernst and Young v. Baker and O'Neill. Thank you, Your Honor. Thank you very much. The case will be taken under advisement.